SUMMARY MEMORANDUM AND OPINION; NOT INTENDED FOR PUBLICATION.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PENELOPE MINTER, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 10-0516 (RLW) |
| DISTRICT OF COLUMBIA, | : |
| Defendant. | : |

## MEMORANDUM OPINION[1]

According to the plaintiff, the District of Columbia failed to make reasonable accommodations for her disability and terminated her employment in violation of Titles I and II of the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act, *see* 29 U.S.C. §§ 791 *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), *see* D.C. Code §§ 2-1401.01 *et seq.*  This matter is before the Court on the District of Columbia's motion to dismiss or for summary judgment.  For the reasons discussed below, the motion will be denied without prejudice.

I.      LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

1

SUMMARY MEMORANDUM AND OPINION; NOT INTENDED FOR PUBLICATION.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 570.  A complaint must be dismissed if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

On a Rule 12(b)(6) motion, the Court treats the factual allegations of a plaintiff's complaint as if they were true, and draws all reasonable inferences stemming from such factual allegations in the plaintiff's favor.  *See Erickson*, 551 U.S. at 94.  While the complaint is to be "construed liberally in the [plaintiff's] favor," the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Moore v. Hartman,* 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56(c) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)).  A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  A party, however, must provide more than "a scintilla of

evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. *Id.* at 252.

## II.   BACKGROUND

The plaintiff "suffers from sarcoidosis and rheumatoid arthritis, both of which are chronic, systemic inflammatory diseases that cause pain in the joints, lungs, lymph nodes and other tissue." Am. Compl. ¶ 10. In addition, the plaintiff has "fibromyalgia, a medical disorder characterized by chronic widespread pain, debilitation fatigue, sleep disturbance and joint stiffness." *Id.* ¶ 10.

The plaintiff was employed by the District of Columbia as a social worker for approximately 19 years. *Id.* ¶ 9. During those years, she "was promoted several times, managed independent programs and staff, and had excellent recommendations." *Id.* ¶ 11.

In August 2001, the plaintiff was detailed to the Child Fatality Review Committee ("CFRC") as a Program Specialist with the Office of the Chief Medical Examiner ("OCME"). *Id.* ¶ 12. When a new Child Fatality Review ("CFR") Coordinator position was advertised, the plaintiff applied and interviewed for the position, but was not selected. *Id.* ¶ 13. On the belief that a less qualified person with no prior experience in fatality review had been chosen, the plaintiff filed a grievance. *Id.* ¶ 14. Although the position was withdrawn after she filed her grievance, according to the plaintiff, the position later was awarded to the same, less qualified individual. *Id.* The plaintiff was informed by her supervisor, Sharan James, that she was not selected because she had previously made "requests . . . for accommodation of her disabilities." *Id.* ¶ 15.

In late 2004 or early 2005, Ms. James "was promoted to Fatality Review Coordinator, leaving the CFR Coordinator position vacant." *Id.* ¶ 18. In early 2006, the District advertised

3

SUMMARY MEMORANDUM AND OPINION; NOT INTENDED FOR PUBLICATION.

two positions: Child Fatality Review Coordinator and Domestic Violence Fatality Review ("DVFR") Coordinator. *Id.* ¶ 20. Upon the belief that the latter position had a "less burdensome case load," *id.* ¶ 22, which "would best accommodate [her] health conditions," *id.* ¶ 20, the plaintiff expressed a preference to Ms. James for the DVFR Coordinator position, *id.* ¶ 22. After discussing both positions with Ms. James, as well as "specific accommodations for her disability as . . . related to each position," *id.*, the plaintiff applied for both positions. *Id.* ¶ 24. The accommodations she sought "included a flexible work schedule, reduced hours, or the ability to work from home one or two days per week." *Id.* ¶ 22. With Ms. James' coaxing, however, and in light of the plaintiff's experience with child fatality review, the plaintiff withdrew her application for the DVFR Coordinator position. *Id.* The plaintiff was offered the CFR Coordinator position, and she accepted the position on or about May 1, 2006. *Id.* ¶ 25. The CFR Coordinator's duties included the day-to-day management of the CFRC, supervision and training of CFRC staff, development of grant applications, selection and assignment of cases for review, development of reports from case reviews, and attendance at review team meetings. *See id.*

In June 2006, *id.* ¶ 27, and on two other occasions, *id.* ¶ 28, the plaintiff sought permission to work from home one to two days per week to accommodate her disabilities. *Id.* ¶ 26. Although "Ms. James allowed staff to have flexible schedules upon request," *id.* ¶ 23, the plaintiff's requests were denied, *id.* ¶ 27, in part because of "confidentiality concerns" about taking "medical records home to review," *id.* ¶ 29, notwithstanding Ms. James' acknowledgement that she and the plaintiff "already brought work home on a regular basis, as did numerous co-workers," *id.* ¶ 30. Instead, Ms. James "recommended that [the plaintiff] convert the position to [a] part-time" position. *Id.* ¶ 27.

On September 26, 2006, the plaintiff "slipped on the wet, newly-waxed hallway floor in the OCME building" resulting in injuries to her back and left knee, and aggravating prior injuries to her left ankle and foot sustained in a 2005 fall, *id.* ¶ 32, when she "tripped over office equipment power cords," fell, and "injured her left ankle and foot." *Id*. ¶ 19. She sought disability compensation for her injuries. *See id.* ¶ 34.

The plaintiff requested clerical or administrative assistance with her non-essential duties; Ms. James allegedly "refused the accommodation and indicated that she would only consider [it if the plaintiff] converted her full-time position to part-time." *Id.* ¶ 36. After having met with an EEO Coordinator, *see id.* ¶¶ 36, 38, the plaintiff filed a charge of discrimination based on disability with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 39.

As her condition worsened in early 2007, and as she was pursuing "overlapping Workers' Compensation and ADA claims" without assistance, *id.* ¶ 42, the plaintiff "began staying up late to work to keep up with her work load and her frequent doctor and physical therapy appointments," *id.* ¶ 43. Ms. James allegedly warned the plaintiff "that she was prohibited from staying late and that the administrative staff was 'watching her.'" *Id.* By February's end, the plaintiff experienced "pain and fatigue from the injuries and disability [which] required significant periods of rest and inactivity for less and less exertion." *Id.* ¶ 44. The stress and "medical duress" she experienced prompted the plaintiff to take medical leave on February 27, 2007. *Id.* Her status was recorded as "absent without leave" instead of "leave without pay." *Id.* ¶ 45. The plaintiff was instructed "not to return to work until she was 'fit for duty,' and that she should apply for Social Security Disability Income." *Id.* ¶ 47.

The plaintiff conferred with OCME's Chief of Staff, Beverly Fields, and General Counsel, Sharlene Williams, on June 1, 2007, *id.* ¶ 47, at which time the plaintiff was advised

SUMMARY MEMORANDUM AND OPINION; NOT INTENDED FOR PUBLICATION.

that "they had calculated [her] Family Medical and Leave Act ('FMLA') leave and [determined that] she had none left," *id.* The plaintiff had not applied for FMLA leave at that point, and was permitted to do so even though the request "would be declined since she had no leave left." *Id.*

At the suggestion of Ms. Fields and Ms. Williams, *see id.*, on June 3, 2007, the plaintiff requested FMLA leave, asked to be placed on leave without pay status, or, alternatively, asked "to have leave loaned to her via the 'Leave Bank.'" *Id.* ¶ 48. On June 14, 2007, Ms. James sent the plaintiff a written request for "medical certification for her FMLA application," *id.* ¶ 49, and on June 20, 2001, the plaintiff submitted "a medical certification from her neurologist . . . that [she] was 'totally disabled'" for an indefinite period beginning on September 26, 2006, *id.* ¶ 50. She "projected that she would return to work by early September 2007 based on her prognosis." *Id.* ¶ 50.

The plaintiff's employment was terminated effective August 8, 2007, an action which the plaintiff attributes to "her attempts to secure . . . reasonable accommodation for her disabilities." *Id.* ¶ 51. She filed a second charge of discrimination based on disability with the EEOC on October 19, 2007. *Id.* ¶¶ 53, 58a. The EEOC issued a Notice of Right to Sue on December 22, 2009. *Id.* ¶¶ 56, 58.c.

On November 14, 2007, the plaintiff also filed a charge of discrimination with the District of Columbia's Office of Human Rights ("DCOHR") "alleging retaliation and denial of D.C. FMLA benefits; her charge was dismissed administratively based on the prior EEOC filing, however. *Id.* ¶ 54. Her request for reconsideration was granted on February 5, 2008, but only with respect to the FMLA allegation. *Id.* ¶ 55. By letter dated June 3, 2008, the DCOHR

notified the plaintiff that it found "no probable cause to believe that the District unlawfully denied [her] leave pursuant to the D.C. FMLA." *Id.*

On March 22, 2010, the plaintiff submitted her *pro se* complaint and application to proceed *in forma pauperis* to the Clerk of Court. The Court granted her application to proceed *in forma pauperis* on March 26, 2010, and the Clerk docketed the complaint and application on March 30, 2010.

The plaintiff alleges that the District failed to provide her reasonable accommodation for her disability, namely a flexible work schedule or permission to work from home one or two days per week (Counts I and II), and discharged her for having requested accommodations (Count III), in violation of the ADA. She further alleges that these same actions violated the Rehabilitation Act (Counts IV and V). Lastly, the plaintiff alleges that her termination violated the DCHRA (Count VI). She demands a declaratory judgment, reinstatement, back pay, and an award of attorney fees and costs, among other relief.

III.   DISCUSSION

*A. The Plaintiff Filed Her Complaint Timely*

A plaintiff bringing a disability discrimination claim under Title I of the ADA must file her complaint within 90 days after receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. §§ 2000e-5(f)(1), 12117(a). The District of Columbia moves to dismiss Counts I and III of the Amended Complaint on the ground that the plaintiff failed to file her complaint timely. *See* Mem. of P. & A. in Supp. of Def. District of Columbia's Mot. to Dismiss, or in the Alternative, for Summ. J. ("Def.'s Mem.") at 5-6. Specifically, the District argues that the plaintiff did not file her complaint until March 30, 2010, the date on which the Clerk docketed the pleading, or 94 days after her receipt of the right-to-sue letter. *Id.* at 6. The plaintiff responds by stating that

"[t]he date the Clerk's Office received the complaint, March 22, 2010, is within the 90-day filing period that began when [she] received her right-to-sue letter from the EEOC on December 22, 2009." Minter's Mem. in Opp'n to the District of Columba's Mot. to Dismiss, or, in the Alternative, for Summ. J. ("Pl.'s Opp'n") at 4. The Court concurs.

Any delay which occurred between the Clerk's receipt of this *pro se* complaint, accompanied by an application to proceed *in forma pauperis*, and entry of these documents on the Court's electronic docket is attributed to the Court's internal processes. The statute of limitations is tolled for this period. *See Murray v. Harvey*, No. 05-0514, 2006 WL 176103, at *1 (D.D.C. Jan. 24, 2006) (tolling the 90-day statute of limitations for the filing of an employment discrimination complaint from the date on which the Clerk received the *pro se* plaintiff's complaint and application to proceed *in forma pauperis* and the date on which the Clerk officially filed the complaint on the Court's electronic docket); *Guillen v. Nat'l Grange*, 955 F. Supp. 144, 144-45 (D.D.C. 1997). The plaintiff is not penalized for this administrative delay. *See, e.g., Tawwaab v. Virginia Linen Serv., Inc.*, 594 F. Supp. 2d 68, 70 (D.D.C. 2009). Ninety calendar days from December 22, 2009, the date on which the plaintiff received the right-to-sue letter, falls on March 22, 2010, the date on which the Clerk received her *pro se* complaint and application to proceed *in forma pauperis*.

The Court concludes that the plaintiff timely filed her complaint, and the District's motion to dismiss Counts I and III on this basis will be denied.

### B. The Plaintiff Alleges that She Is a "Qualified Individual"

The standards for a failure-to-accommodate claim are the same under both the ADA and Rehabilitation Act:

> In order to make out a prima facie case, a plaintiff must show: (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.

*Gordon v. District of Columbia*, 480 F. Supp. 2d 112, 115 (D.D.C. 2007).  The District of Columbia moves to dismiss the plaintiff's discrimination and retaliation claims under both the ADA and the Rehabilitation Act on the ground that the plaintiff is not a "qualified individual" for purposes of these statutes.  *See generally* Def.'s Mem. at 6-8.

Generally, the ADA prohibits a covered entity from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The parties do not dispute that the District of Columbia is "covered entity" for purposes of the ADA.

For purposes of Title I of the ADA, a "qualified individual" is:

> [A]n individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8).  A disability is:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1); *see* 29 U.S.C. § 705(9)(B) (adopting the ADA's definition of "disability" for purposes of the Rehabilitation Act).  The parties do not dispute that "working" is considered a major life activity.  42 U.S.C. § 12102(2)(A).

9

Focusing narrowly on the "medical certification from her neurologist . . . that [the plaintiff] was 'totally disabled' from September 26, 2006 to 'indefinitely,'" Am. Compl. ¶ 50, the District argues that the plaintiff is not a qualified individual because she "was unable to perform the essential duties of her position." Def.'s Mem. at 8. According to the District, an employee who is on indefinite leave or who cannot appear at her designated workplace cannot perform essential functions of her job. *See id.* at 7. Because [the] plaintiff has plead that she was totally and indefinitely disabled, she cannot also contend that she was a 'qualified individual.'" *Id.* at 8.

The plaintiff counters that the District "has mischaracterized the facts stated in the Amended Complaint" by "improperly focus[ing] only on a certification from [the] neurologist, which addresses her prior workplace injuries and preexisting disability as 'total and indefinite' for purposes of her disability claims." Pl.'s Opp'n at 4.

For purposes of this motion, the Court accepts the factual allegations of the Amended Complaint as true, and during the relevant time period, the plaintiff had been placed on "absent without leave" status. *See* Am. Compl. ¶¶ 44-45. It appears that the plaintiff obtained the neurologist's certification to support her application for Social Security Disability Income benefits, *id.* ¶ 47, or her request for excused leave (such as leave without pay or FMLA leave), *see id*. ¶¶ 48-49, particularly in light of her stated intention to "return to work by early September 2007 based on her progress" at that time, *id.* ¶ 50.

The fact that the plaintiff was deemed "totally disabled" for purposes of seeking disability benefits or FMLA leave does not automatically preclude her assertion of disability for purposes of the ADA or the Rehabilitation Act. *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 803 (1999); *Swanks v. Washington Metro. Area Transit Auth.*, 116 F.3d 582, 586

(D.C. Cir. 1997) (holding that the receipt of disability benefits does not preclude subsequent ADA relief). In some situations a claim for Social Security Disability Income benefits "can comfortably coexist side by side" with an ADA claim. *Cleveland*, 526 U.S. at 803. While the ADA takes into account a plaintiff's ability to perform the essential functions of her position with a reasonable accommodation, the Social Security Administration does not, *see id.*, imposing a burden on the plaintiff to "explain[] the discrepancy" between her claim of total disability for one purpose, while claiming that she could perform the essential functions of her position for another. *Id.* at 807. The plaintiff should be allowed to do so in this case.

> C. The Plaintiff's Amended Complaint Adequately Alleges Retaliation Claims

According to the District, the plaintiff's retaliation claims (Counts III, V and VI) "are inextricably entwined with her claims for failure to accommodate," and therefore the retaliation claims also must fail.[2] Def.'s Mem. at 8. Based on the neurologist's certification that the plaintiff would be unable to work at all for an indefinite period, the District argues, "her allegations preclude any causal connection between [her] protected activity and her termination." *Id.* at 9. The plaintiff counters that the neurologist's certification was intended "for disability benefit purposes . . . to determine the level of disability benefits paid to claimants," and "was not and is not [a certification that she is] 'indefinitely and totally disabled' for the purposes of her ADA and Retaliation [Act] claims." Pl.'s Opp'n at 6.

A plaintiff states a claim of retaliation under the ADA by alleging that she engaged in protected activity, that she was subjected to an adverse action by her employer, and that there is a causal link between the protected activity and the adverse action. *Mayers v. Laborers' Health & Safety Fund of N. Am.,* 478 F.3d 364, 369 (D.C. Cir. 2007) (citing *Smith v. District of*

---

[2] Counsel for the District represents that these arguments "apply equally to plaintiff's claim for relief under the DCHRA." Def.'s Mem. at 8 n.3.

*Columbia,* 430 F.3d 450, 455 (D.C. Cir. 2005)). Similarly, the elements of a retaliation claim under the Rehabilitation Act are "that (1) she engaged in statutorily protected activity; (2) her employer took a materially adverse action against her; and (3) a causal connection between the two exists." *Norden v. Samper*, 503 F. Supp. 2d 130, 156 (D.D.C. 2007). Causation may be established by "a close temporal relationship alone" between the protected activity and the adverse action. *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003). The parties do not dispute that termination is an adverse action, and the Amended Complaint adequately alleges the remaining elements of both the ADA and Rehabilitation Act claims: the plaintiff's engagement in protected activity by requesting accommodations and by filing charges of discrimination, *see* Am. Compl. ¶¶ 80-84 (Count III), 99-103 (Count V), and suggesting, at least, temporal proximity between her protected activity and her termination, *see id.* ¶¶ 32-51, as most of the pertinent events occurred within a one-year period.

### D.  The Plaintiff's Claim Under Title II of the ADA May Proceed

According to the plaintiff, the District of Columbia is a "public entity" for purposes of the ADA, Am. Compl. ¶ 72, and in this capacity the District "denied [the plaintiff an] opportunity for a reasonable accommodation for her disability," *id.* ¶ 75, in violation of the ADA, *id.* ¶ 76. The District of Columbia argues that Count II must be dismissed because employment discrimination is not actionable under Title II of the ADA. *See generally* Def.'s Mem. at 9-14. The plaintiff objects, *see generally* Pl.'s Opp'n at 8-11, and urges the Court to adopt an alternative view, *id.* at 9, that employment discrimination claims may be brought under Title II of the ADA, *id.* at 8.

Title I of the ADA expressly applies to employment, s*ee* 42 U.S.C. § 12112(a), while Title II pertains to public services, providing that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination by any such entity*.

42 U.S.C. § 12132(a) (emphasis added). The District does not cite, and the Court does not identify, controlling authority to support the proposition that an employment discrimination claim cannot be brought under Title II of the ADA. On the current record, the Court will deny the District's motion to dismiss Count II of the Amended Complaint.

### *E. The DCHRA Claim Is Not Barred Under D.C. Code § 12-309*

In relevant part, D.C. Code § 12-309 provides:

> An action may not be maintained against the District of Columbia *for unliquidated damages* to person or property unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 23-309 (emphasis added). The provision applies to claims under the DCHRA. *See Blocker-Burnette v. District of Columbia*, 730 F. Supp. 2d 200, 203 (D.D.C. 2010); *Owens v. District of Columbia*, 993 A.2d 1085, 1087-88 (D.C. 2010) (collecting cases). Notice to the Mayor under D.C. Code § 23-309 is a prerequisite to suit because it operates as a waiver of the District's sovereign immunity, *see, e.g., Faison v. District of Columbia*, 664 F. Supp. 2d 59, 68 (D.D.C. 2009), and compliance with it is mandatory, *see id.*

The District of Columbia moves to dismiss the discrimination claim under the DCHRA (Count VI) on the ground that the plaintiff failed to provide notice of her claim under D.C. Code § 12-309. *See* Def.'s Mem. at 14-16; *see id.*, Ex. B (Heard Decl.) ¶ 4. The plaintiff argues that the notice requirement applies to unliquidated damages, not to her demands for liquidated damages and equitable relief. Pl.'s Opp'n at 12.

"A debt is liquidated if at the time it arose, it was an easily ascertainable sum certain." *District of Columbia v. Campbell*, 580 A.2d 1295, 1300 (D.C. 1990) (internal quotation marks and citation omitted). Generally, because awards of back pay "are easily ascertainable," they are considered liquidated damages. *Elzeneiny v. District of Columbia*, 699 F. Supp. 2d 31, 34 (D.D.C. 2010). Moreover, "back pay awards in employment discrimination cases are generally considered a form of equitable relief, and equitable relief is not barred by § 12-309," *id.,* (citing *Caudle v. District of Columbia*, No. 08-0205, 2008 WL 3523153, at *2 (D.D.C. Aug. 13, 2008)), and awards of attorney's fees "are not generally considered damages at all under District of Columbia law and thus are not encompassed by the phrase 'unliquidated damages,'" *id.* (citing *Caudle*, 2008 WL 3523153, at *3). Persuaded by this authority, the Court concludes that the plaintiff's failure to submit notice to the District under D.C. Code § 12-309 does not bar her disability claim or her demand for relief in the form of back pay, reinstatement of her employment, civil service status, and annual and sick leave, and an award of attorneys' fees and costs.

*F. The Defendant's Motion to Dismiss Based on the Statute of Limitations Will Be Denied*

The District of Columbia moves to dismiss the plaintiff's "allegations" of events pertinent to the Rehabilitation Act arising on or before March 30, 2007, on the ground that a three-year statute of limitations bars such claims. *See* Def.'s Mem. at 16-17.

A party may raise the statute of limitations as an affirmative defense on a motion under Rule 12(b)(6) "when the facts that give rise to the defense are clear from the face of the complaint." *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 179 (D.D.C. 2010) (citing *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)). The District contends that, "[a]lthough the Rehabilitation Act does not include its own statute of limitations, .

SUMMARY MEMORANDUM AND OPINION; NOT INTENDED FOR PUBLICATION.

. . . courts draw 'the statute limitations from the analogous state statute,'" Def.'s Mem. at 16 (quoting *Adams*, 740 F. Supp. 2d at 184), meaning that a three-year statute of limitations applies, *see id.* (citing *Stewart v. District of Columbia*, No. 04-1444, 2006 WL 626921, at *11 (D.D.C. Mar. 12, 2006) (applying D.C. Code § 12-301). In light of the plaintiff's filing of this action on March 30, 2010, the defendant argues that claims arising on or before March 30, 2007, are not actionable. *See id.*

In addition, the District moves to dismiss the plaintiff's ADA "allegations," Def.'s Mem. at 18, arising on or before April 22, 2007, *id.* at 17. Where, as the District asserts, a worksharing agreement exists between the EEOC and the District's local fair employment practices agency, a plaintiff must file her claim within 300 days, *see id.* at 18, and allegations of events occurring more than 300 days before filing of her first EEO charge on October 19, 2007, or "as far back in time as 'late 2002 or early 2003' when the Child Fatality Review Committee purportedly 'hired a less qualified individual with no prior experience in fatality review,'" *id.*, are subject to dismissal as untimely, *id.* at 18-19.

The plaintiff objects to the District's efforts to bar "allegations," rather than claims, *see* Pl.'s Opp'n at 13, in what the plaintiff characterizes as an attempt to "erase its history of illegal employment actions" against her, *id.* The Court declines to address any distinction between allegations and claims, satisfied that, at this early stage of the proceedings, the plaintiff adequately has alleged discrimination and retaliation under the ADA, the Rehabilitation Act, and the DCHRA. Whether the plaintiff can prove her claims is a different question, and the District will have an opportunity to explore the viability of the claims, and the dates on which they arose, during discovery.

IV.   CONCLUSION

SUMMARY MEMORANDUM AND OPINION; NOT INTENDED FOR PUBLICATION.

For the reasons discussed above, the Court concludes that the plaintiff timely filed this action and her Amended Complaint adequately alleges claims of discrimination and retaliation under the ADA, the Rehabilitation Act, and the DCHRA.  Accordingly, the District's motion to dismiss or for summary judgment will be denied without prejudice.  An Order accompanies this Memorandum Opinion.


SO ORDERED.
March 19, 2012

_____
ROBERT L. WILKINS
United States District Judge